# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TREASA FORD, )<br>)<br>Plaintiffs, )<br>vs. )<br>)<br>CHICKASAW REGIONAL )<br>LIBRARY SYSTEM, and )<br>LYNN MCINTOSH, Individually )<br>Individually, )<br>)<br>Defendants. ) | NO. CIV-16-1273-HE |

## ORDER

Plaintiff Treasa Ford filed this § 1983 action against her former employer, the Chickasaw Regional Library System ("Library System"), and her former supervisor, Lynn McIntosh, the Executive Director of the Library System. She alleges that defendant McIntosh demoted her from business-manager to library aid/assistant and then terminated her after she reported to a Library System Board member that Ms. McIntosh had committed "unethical and potentially unlawful" conduct. Doc. #1, p.3.[1] Plaintiff asserts defendants retaliated against her, violating not only her free speech rights under the First Amendment (Count I) and art. 2, § 22 of the Oklahoma Constitution (Count II), but also Oklahoma public policy (Count III). Defendants have filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6).

---

[1]*Page references to briefs and exhibits are to the CM/ECF document and page number.*

When considering whether a plaintiff's claim should be dismissed under Rule 12(b)(6), the court accepts all well-pleaded factual allegations as true and views them in the light most favorable to the plaintiff as the nonmoving party. S.E.C. v. Shields, 744 F.3d 633, 640 (10th Cir. 2014). While all that is required is "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), the complaint still must contain "enough facts to state a claim to relief that is plausible on its face" and "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 555 (2007). Considering the complaint under this standard, the court concludes defendants' motion should be granted in part and denied in part.

Count I (Section 1983 -- First Amendment Retaliation)

Where the plaintiff is a public employee, the "familiar Garcetti/Pickering analysis governs First Amendment retaliation claims." Nixon v. City & Cty. of Denver, 784 F.3d 1364, 1367 (10th Cir. 2015) (quoting Trant v. Oklahoma, 754 F.3d 1158, 1165 (10th Cir. 2014)). Five elements are analyzed:

> (1) whether the speech was made pursuant to an employee's official duties; (2) whether the speech was on a matter of public concern; (3) whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests; (4) whether the protected speech was a motivating factor in the adverse employment action; and (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct.[2]

---

[2]*In the Tenth Circuit, "the first three inquiries are resolved by the court, whereas the final two are generally determined by the trier of fact." Chavez-Rodriguez v. City of Santa Fe, 596 F.3d 708, 713 (10th Cir. 2010).*

2

With respect to plaintiff's First Amendment retaliation claim, Defendant McIntosh contends she is entitled to qualified immunity, while the Library System asserts plaintiff has failed to allege sufficient facts showing the existence of an unconstitutional policy or custom required to state a claim for municipal liability.

In resolving a motion to dismiss based on qualified immunity, a court must consider "whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right, and whether the right at issue was clearly established at the time of defendant's alleged misconduct." Leverington v. City of Colorado Springs, 643 F.3d 719, 732 (10th Cir. 2011) (internal quotation marks omitted). Defendant McIntosh does not claim that it was not clearly established in 2015 "that a government employee could not be terminated for speaking out on matters of public concern." McFall v. Bednar, 407 F.3d 1081, 1090 (10th Cir. 2005). What she argues is that plaintiff has failed to sufficiently plead that she (McIntosh) violated plaintiff's free speech rights because plaintiff has not alleged the content of the speech which she claims caused McIntosh to terminate her. Without that specific factual information, defendant McIntosh asserts the complaint is deficient because the court cannot determine "whether the speech was made pursuant to [plaintiff's] employment," Chavez-Rodriguez v. City of Santa Fe, 596 F.3d 708, 716 (10th Cir. 2010), and whether plaintiff spoke "as a citizen upon matters of public concern or merely as an employee upon matters only of personal interest." McFall, 407 F.3d at 1088 (internal quotation marks omitted). Specifically, defendant McIntosh faults plaintiff for failing to allege facts which "establish how it is she knows McIntosh's conduct was actually 'unethical' or 'potentially unlawful'" and "what conduct she

3

actually reported versus the conduct that she merely determined to be objectionable." Doc. #11, p. 15.

Defendant McIntosh also challenges plaintiff's allegation that her "reports were not part of [her] job duties and not "communication[s] within her chain of command." Doc. #1, p. 6, ¶31. Because plaintiff was employed as the business manager and she made the reports to her supervisor's superior, it is not evident, defendant McIntosh argues, that plaintiff's speech fell outside the scope of her official duties.

Finally, defendant McIntosh claims plaintiff has failed to set forth facts demonstrating that her demotion and termination were a reaction to her alleged speech. Defendant argues that plaintiff "neglects to even establish whether McIntosh had personal knowledge of Ford's conduct prior to any adverse employment action." Doc. #11, p. 16.

"A government employee's [s]peech that . . . questions the integrity of government officials clearly concerns vital public interests." McFall, 407 F.3d at 1089 (internal quotation marks omitted). And "'[s]peech involves a public concern when the speaker intends to bring to light actual or potential wrongdoing or breach of public trust by a public official or to disclose any evidence of corruption, impropriety, or other malfeasance within a governmental entity.'" Denton v. Yancey, 2016 WL 5720905, at *3 (10th Cir. Oct. 3, 2016) (quoting Eisenhour v. Weber Cty., 744 F.3d 1220, 1228 (10th Cir. 2014)). "[I]f an employee engages in speech during the course of performing an official duty and the speech reasonably contributes to or facilitates the employee's

performance of the official duty, the speech is made pursuant to the employee's official duties." Chavez-Rodriguez, 596 F.3d at 713 (internal quotation marks omitted).

In the complaint, plaintiff alleges that during her employment defendant McIntosh "engaged in conduct that Plaintiff found to be unethical and potentially unlawful." Doc. #1, p. 3. She then lists examples of such conduct. Admittedly plaintiff's contentions are somewhat sparse and it is questionable whether speech regarding conduct that plaintiff considers to be merely unethical is of concern to the public. However, plaintiff's allegations against her former supervisor extend beyond merely unethical behavior.[3] They include charging the Library System for personal expenses and requiring plaintiff and other employees to work during business hours on Ms. McIntosh's personal projects. Speech regarding the alleged misuse of public funds and other improprieties do involve matters of public concern.

A closer question is whether reporting such violations was part of plaintiff's job. Plaintiff asserts that "[t]here is no possible circumstance under which the Court could find that reporting illegal conduct of one's superiors is an 'official job duty.'" Doc. #12, p. 6. If plaintiff uncovered the malfeasance while performing her job as business manager, disclosing it possibly fell within the scope of her official responsibilities. However, as some of the alleged misconduct did not consist of financial irregularities,

---

[3]*The court is not expressing an opinion as to whether the statements plaintiff actually made are sufficient to constitute protected speech. However, at this stage of the litigation it must accept her factual allegations as true and draw all reasonable inferences in her favor.*

5

plaintiff's statement that the reports were not part of her job duties suffices to allege that her speech was protected.[4]

As for defendant McIntosh's challenge to plaintiff's allegations regarding causation, little discussion is warranted. Plaintiff pleaded that she reported Ms. McIntosh's alleged misconduct from January 2015 until August 2015, was interviewed in September 2015 by an investigator hired by defendant Library System regarding her complaints, and was called into a meeting with defendant McIntosh around October 14, 2015 about the investigation. She claims defendant McIntosh demoted her during the meeting and told her if she made another complaint she would be terminated. She was fired less than three months later. That is enough to allege a factual basis for the conclusion that plaintiff's "speech was a substantial or motivating factor behind the adverse employment decision." McFall, 407 F.3d at 1088.

Plaintiff has therefore stated a § 1983 First Amendment retaliation claim against defendant McIntosh. She also has successfully pleaded a § 1983 free speech claim against the Library Board. "[A] municipality can be liable under § 1983 if the 'final policymaker' takes the unconstitutional action." Moss v. Kopp, 559 F.3d 1155, 1169 (10th Cir. 2009). Here plaintiff has alleged that defendant Lynn McIntosh was the

---

[4]*In arguing that plaintiff's allegations are insufficient to demonstrate that her speech was not "commissioned by [her] employer," Reinhardt v. Albuquerque Pub. Sch. Bd. of Educ., 595 F.3d 1126, 1135 (10th Cir. 2010), defendant McIntosh asserts that plaintiff admits she reported her grievances up the chain of command – to her supervisor's supervisor. However, "whether an employee's speech was made outside the chain of command merely helps inform the court as to whether the speech was made pursuant to one's employment." Chavez-Rodriguez, 596 F.3d at 716. It is a factor to consider, but is not determinative.*

Executive Director of the Library System, that she was the Library System's official policymaker and that she demoted and terminated plaintiff. More is not required at this stage of the litigation to plead a claim of municipal liability. Defendants' motion will be denied as to plaintiff's First Amendment retaliation claim in Count I.

Count II (Okla. Const. art. 2, § 22 Free Speech Clause)

Although defendants assert that the same analysis and defenses apply to plaintiff's federal and state free speech claims, her claim asserted under state law is governed by Oklahoma's Governmental Tort Claims Act ("GTCA"), 51 Okla. Stat. §§ 151-258. Different defenses may be available under the GTCA. As they were not raised and as the court has concluded plaintiff has adequately pleaded a denial of her free speech rights, defendants' motion will be denied as to plaintiff's retaliation claim in Count II based on Oklahoma law.

Count III Burk Tort

In Count III plaintiff asserts that she "reported wrongdoing of her employer including misuse of public funds, misconduct, waste of public property in violation of 21 O.S. § 341, *et seq.* and other state laws and regulations for which officers could be ousted." Doc. #1, p. 7, ¶43. Defendant McIntosh contends the claim should be dismissed because a Burk tort may only be maintained against a plaintiff's employer.[5] The court agrees. *See* Eapen v. McMillan, 196 P.3d 995, 998 (Okla. Civ.App. 2008) (concluding that "nothing in Burk or its progeny seems to extend the concept of 'employer'" to "the

---

[5]*Other grounds for dismissal of the claim are also asserted, but it is unnecessary to address them in light of the court's other conclusions.*

7

point that a co-worker or supervisor in the workplace would be individually liable for a public policy tort"). Plaintiff also conceded the point by failing to address it. Plaintiff's Burk tort claim against defendant McIntosh will be dismissed.

The Library Board seeks to dismiss the Burk tort claim against it on various grounds but one suffices – plaintiff has not pleaded a public policy which supports her claim. The basis for the Burk public policy exception must be articulated in "a specific Oklahoma court decision, state legislative or constitutional provision, or a provision in the federal constitution that prescribes a norm of conduct for the state." Darrow v. Integris Health, Inc., 176 P.3d 1204, 1212 (Okla. 2008). Plaintiff has not pleaded an adequate basis for her claim. The statute cited in the complaint - 21 Okla. Stat. § 341 - pertains to embezzlement, which is not the misconduct defendant McIntosh allegedly committed. In her response brief plaintiff argues that the free speech clause in the Oklahoma Constitution, Okla. Const. art. 2, § 22, furnishes the basis for her public policy tort.[6] If so, Count III duplicates Count II. Regardless, as the complaint does not sufficiently identify a public policy supporting plaintiff's claim, Count III will be dismissed. Plaintiff's request to amend will be granted, though it appears amendment may be unnecessary and futile.

Accordingly, defendants' motion to dismiss [Doc. #11] is granted in part and denied in part. The motion is denied as to Counts I and II and granted as to Count III.

---

[6] *Plaintiff erroneously asserts that her complaint" sufficiently identifies" Okla. Const. art. 2, § 22 as the basis for her Burk tort claim.*

8

Plaintiff is granted leave to amend as to her Burk tort claim. Any amended complaint must be filed within seven days.

**IT IS SO ORDERED**

Dated this 26th day of January, 2017.

JOE HEATON
CHIEF U.S. DISTRICT JUDGE